Your Honor, my name is Joel Hansen. I represent Don and Brenda Davis, the appellant. We're here today. I would like to reserve five minutes for my rebuttal, please. We are seeking the reversal and dismissal of the summary judgment claim on summary judgment of the Davis's claims against American State Insurance Company. And we would have this court remand this matter back to the trial court. This case is about the collapse of a warehouse roof. In September of 2009, a rainstorm occurred that caused part of the Davis's warehouse roof to fall to the ground, and part of it remained standing, but too dangerous to occupy. Counsel, I think there's no real question about the facts here, and I think there's no question that the collapse of the roof resulted in coverage under the insurance policy. I think the issue is the extent of the repairs that the policy covers, and whether their prudent choice to replace it all rather than just some of it was a choice as to which the insurance company has to bear the cost of making that particular decision. And would you point to the parts of the policy that, in your view, require the insurer to pay not only for the part that did collapse, which they agreed that they had to pay for, but also the remainder? Yes, Your Honor. It's in appellant's brief, page 15, is the collapse coverage provision. Okay, can you tell me, I'm looking at the policy though, not at the brief at the moment. So that would be on page... What page of the policy? Let's see. It would be on ER 18-5 at 55 and 59, I believe. So I actually believe 59 would be the policy, or 55. I'm sorry. Go ahead. I don't have a copy of the policy in front of me. That's fine. Your Honor. It's the additional coverage collapse in part D. There are a number of, well, you're looking at, there are a number of cases, I think you pointed to some of them, that I'll say define collapse very broadly. Yes. But in this case, I think you can almost consider the policy itself at a definition of collapse. Correct. Which would mean that those other cases really don't apply here, because it's defined in the policy. I think that's why Judge Graber was asking you what part of the policy do you depend on for this, I'll call it extended coverage. Well, looking at the collapse provision where it says with respect to buildings and has part A. It says collapse means an abrupt falling down or caving in with the result that the building or part of the building cannot be occupied for its intended purpose. And that occupancy language is what's key here, because as a result of the collapse, no part of the Davis' building could be occupied for its intended purpose. The roof was bent in such a way throughout it, all the trusses. See, there are two kinds of coverage here. There's the roof repair amount, and then there's the business loss amount. And so what you're saying may relate to that, but it seems to me that the policy very, very clearly says that just because part of the building is in danger of collapsing later, it is not considered to be in a state of collapse, you know, under the portion of the policy that you pointed to. So I'm having difficulty seeing why, apart from the business loss question, which is separate, why this policy would have to cover the replacement of the entire roof. Well, looking at the collapse provision, the definition of collapse is actually limited to part A. The remainder provisions are clarifications that if a building has not fallen down, it's not in a state of collapse. But what's different about this case than the provision parts B, C, and D is that part of the building did fall down, and so part A is what applies. Well, no, it all applies because, you know, part of it collapsed, and the rest falls into the part of the building that may be in danger of falling down or caving in later, or that it might be cracking, bulging, sagging, bending, et cetera, et cetera, all the other things. So it seems to me that that entire segment of the policy differentiates between the things that fell down and the remainder that didn't fall down, even if it might later. Every time you have a collapse, a fall down of a part of the building, you're going to have another part of the building that hasn't quite fallen down yet. This just makes sense in the way that you're not going to have a building completely reduced to rubble. That's probably why the policy is drafted the way it is. Exactly. Well, the reason the policy is drafted the way it is is because you have these previous rulings saying that if you don't define collapse and you can still show that there's an imminent collapse, even if nothing has fallen to the ground, the insurance company wants to be able to say, we don't want to get in that fight. Nothing has fallen to the ground. We don't want to have an argument over whether or not there's an imminent state of collapse. But here you have a different scenario. You actually have a building that has fallen to the ground. There's no longer a question of who fell. No, the whole building didn't fall to the ground. A portion of the roof collapsed. Right. And so that's, you know, it might be nice if the policy were broader, but it seems to me that the natural reading of it is we'll pay for the part that collapses and we'll pay your business losses even if that's more extensive than the little piece that fell down. But I don't see where there's coverage for the part that didn't fall down, even if it's sensible to repair it. I don't see where they promised to pay for that. Or for unsafe buildings. I think, I mean, there's a lot in the briefs in here today that, you know, that partial collapse created an unsafe building, but I'm not sure the policy provides coverage for something that results in an unsafe building. I'm looking for it, and if there's anything you can point for me that covers that. Part A, it says that the threshold issue is whether or not the building can be occupied. And once a collapse has occurred that renders a building such that it can't be occupied, the cost that the American state's insurance company is required to pay is such that it actually returns the building to a state that it can be occupied again. Well, you know, well, I have a couple of questions. First, I think, I guess I read that limiting phrase with the result in Part A to describe how bad the collapse must be before it results in any payment of any kind. So if the abrupt falling down is, you know, let's say the gutters or something, and it doesn't result in inability to occupy, then even though it fell down, it doesn't count. So I think it's just a limitation on how bad does the collapse have to be before any coverage attaches, rather than being a description of the extent of the coverage. Well, the extent of the coverage is defined in the lost settlement provision, which is on a different page. I believe that is the Washington endorsement, the Washington changes endorsement, which is on page 49 of ER 18.5. And that puts limitations on how much the American state's insurance company is required to pay once the loss occurs. So once coverage attaches, the question then becomes how much does it have to pay? And it says the limit of insurance applicable to the lost for damaged property. And so the limit of insurance in Part 1 is $571,000, according to the policy declarations page. Then the Part 2, it says the amount of cost to replace the damaged item, which is the roof, at the time of the loss. That is a question for decision. Is it the roof or is it the part that collapsed? That is, that's the main question in the case. Yeah, and the issue with Part 2 is when you have a roof that is wholly structurally impaired and only part of it falls down, does the insurance company have a responsibility to returning the roof to a state where it's safe again? Or can it just repair only what's fallen to the ground? And it's just nonsensical to say that an insurance company can provide collapse coverage that doesn't actually require it to return the structure to a safe condition. To rebuild just what's fallen to the ground without addressing the safety issues is an unreasonable and an absurd result, which under Washington law is not how insurance policies are supposed to be construed. It just doesn't make sense when a policyholder calls up their broker and says, does my insurance contract cover collapse? And they're told, yes, it does. And then the insurance company says, well. Well, it's not carte blanche that anything is covered, just because you have some coverage for a collapse. And so it all sort of folds into the same question. If the coverage for a collapse requires repairing everything, the whole roof, then that would be the item. But if the collapse coverage is read to distinguish when part of a building falls down, then it's that part that's the item. So I don't know how they seem like they're the same question over again in a way. Well, the collapse provision creates the threshold issue. Does coverage attach? Sure. Everybody agrees it does. The only question is how much. And then once coverage is attached, you move beyond the coverage provision, beyond the collapse provision, and you look at the lost settlement provision. But it doesn't define item. And if the thing that they've agreed to cover is only the collapsed part, then that's the item. Well, that's reading something into the policy that's not there. Well, yours is, too, because, you know, either way you have to figure out what is the item, and it's not defined. Right. The real question is what is the item, and it's not defined in the policy. And to the extent a policy provision is not defined, it must be construed in favor of the policyholder. It must be construed against the insurance company and the drafter of the policy. That's well-settled Washington law. And so because item was not defined, the item is the roof. And that makes particular sense where you have a part of a building that is structurally impaired, and part of it falls. The whole item should be repaired. You think there's enough doubt as to the answer to the question here that we might consider certifying the question to the Washington Supreme Court? Because this is a question of state law, isn't it, how you interpret this policy? I think that might be the appropriate resolution, because this is going to come up again. Every time you have a large part of a building fall to the ground, areas around that area are likely to be structurally impaired in the same way. So there's going to always be this issue of, does the insurance company just have to pay for what actually fell to the ground, or do they need to make the whole item stable and safe to occupy? I'm just curious, was there an option that they could have bought covers that had more extensive? No. This has become the widely used coverage for collapse throughout not just American states' policies, but many other insurance companies' policies. And this is a response to cases that have interpreted collapse very broadly, so that even when nothing fell down, there was coverage. You're winding down on your time. You may want to save some for rebuttal. I wanted to mention two other things, and that is that American states did not even pay enough money to repair the part that had fallen down to the ground. They paid about half what was necessary. Well, you never raised that in your opening brief, did you? No, we did raise that in the opening brief. To the district court, you never raised that? I believe we did. We cited the... First time I saw it was in your reply brief. Tell me where in your opening brief you raised it. Well, you raised it as part of a bad faith claim, but not as part of the contract claim. And I think that that still preserves the issue. Well, it preserves it as part of the bad faith claim. It preserves it as part of the bad faith claim. Okay. So it's on ER 37 at page 3 is where we raised that as part of the bad faith claim. The other issue is the additional living expenses that were actually not living expenses, pardon me, business interruption expenses, which were actually incurred by the Davises. They were forced to give up two months of rent and not charge that to their tenant in order that the repairs could commence and be completed. They were only paid for two weeks of rent, and there's no legitimate reason for that other than that American states wished the repairs had been done faster. Thank you, counsel. Thank you, Your Honor. Good morning. Good morning. Please record I'm David Jacoby. I'm here for American states. I am going to talk a little bit about the facts because this is really a very unique case factually. It's different from the cases that talk about whether collapse has to mean actually falling down to the ground and whether it's defined or undefined. Here's what we had. We had two separate losses and two separate causes of loss. And by the way, this is not an all-risk policy. This policy only covers covered perils, and it very plainly defines what the covered perils are. And there is a supplemental coverage for collapse, and as Your Honor has pointed out, Judge Graber, it's very carefully defined. First of all, it's abrupt. Well, that happened here. There's no doubt that it happened. That's right. Because of the rainstorm. Well, it happened in this area. That's what's unique about the facts here. And so part of the roof collapsed because of that, and there were structural defects that caused them to … That were totally separate. And it was prudent of them to do the whole roof because of that. Exactly. But that was a separate loss, and let me explain why. What both of the experts, both for the policyholder and for the insurer, said, was the weight of water or snow on this particular portion of the roof caused an abrupt falling down. And they said, now we inspected the rest of the roof, and here's what we found. It wasn't adequately constructed originally, and so what's happened over the course of many years is it has slowly crept, is the word they use. There has been creep, and these trusses have been degraded over time, and some of them have deflected, is the word they use. Some may be an inch. That's the same thing that happened to the part that collapsed. Pardon? That's the same thing that happened to the part that collapsed. No, it's not. Because what happened to the part that collapsed was an abrupt … Oh, no, no, no. The abrupt was on top of that. See? In other words, the entire roof was under that same … Well, that … Right? We can assume that part, the collapsed part of the roof, was built the same way as the other part of the roof. That's true. So they all suffered the same condition. They all suffered the same initial condition, but only one part had an abrupt collapse, and it's the abrupt part that is significant because it only covers abrupt collapse damages. That was the immediate cause of the collapse, right? That's right. Nobody disputes that. Right. But that's the point, Your Honor. If you go to the policy wording, and that's what has to control here, it says that it covers damages caused by an abrupt collapse. It's this same provision that we've been talking about, the additional coverage collapse. Additional coverage collapse, Part D. 18-5 at 62. A, collapse means an abrupt falling down or caving in. Abrupt. Okay? So what you had was one portion of the roof that abruptly fell down. And we don't even have to get to the question of whether falling down means falling all the way to the ground or falling six inches or falling three inches, which is the issue that is raised in a number of the cases. The question here is, is it abrupt? And so what you have is a unique situation. You have a discrete part of the roof that abruptly fell down, and that meets the definition of collapse in D1A at ER 18-5. There's no showing that the rest of the roof, like, fell a couple inches? No, none whatsoever. What both of the experts said was what we see in the rest of the roof is a number of trusses, and I think they said about 50% of the trusses, that have slowly degraded over time. So you don't have an abrupt collapse. And even the cases, the Davises have asked the court to adopt this Oregon District Court decision in Malco, and Malco said you don't have to have a complete falling down, but that was still abrupt. Council, let me direct you to a different part of D, additional coverage collapse, and ask for your comments on that. I think everybody agrees on the facts, which is that one portion of the roof collapsed and the rest did not, but that even though it was only a part, they couldn't occupy the building for some period of time. So it met the definition of collapse. Everybody agrees with that. Now I want you to look at item number two. We will pay for direct physical loss or damage to covered property caused by collapse of a building or any part of a building that is insured under this coverage form, and then there are some conditions like it's from the weight of rain or whatever. Correct. And so my question to you is what does it mean to say we will pay for direct physical loss or damage to covered property caused by collapse of a building? Does that mean that you pay only for the collapsed part? Yes. I think it's very plain. We will pay for direct physical loss or damage. So the direct physical loss or damage caused by the abrupt falling down. Is to replace that part of the roof and clean up the junk that fell in. Exactly. And, Your Honor, you cannot go to the loss payment provision and say that the loss payment provision, which is a valuation provision, it's not a coverage grant. It doesn't say, and because you now have covered property damage, we'll pay for everything whether it's covered or not. And that's the way the Davises would like to have you read it. You cannot read it that way. And this issue about, well, what's the item? Let's take an example. Let's say that you have a homeowner. May I ask you about something else? Because I don't want your time to run out. I have a couple of questions about other issues. And one is the amount of the business interruption loss, the rental and so forth. What is your view as to why the amount on that piece of the claim was appropriate? Again, Your Honor, because we were paying for the covered damage, and the covered damage was only the portion of the roof that had abruptly fallen down. And our consultant determined that the time that would be required to do that repair was approximately two weeks. They came back to us and said, well, we repaired the whole roof and it took us two months. But we don't pay for the repair of the whole roof, nor do we pay for business interruption coverage for the time it takes to repair the whole roof. One part of that repair was essentially maintenance. It's not covered under the policy because it is not direct physical damage to covered property that was caused by a covered peril. The covered peril is abrupt falling down of part of the building. And so we're not paying for costs associated with the repair of damage that wasn't covered in the first place. Well, you also have a difference of opinion, I guess, as to the cost of the repair, though. Well, that's correct. There was a difference of opinion about the cost of the repair. But a difference of opinion is a difference of opinion. And a difference of opinion does not mean the only... But why does a difference of opinion result in summary judgment? Yeah, why does that result in your favor on summary judgment? Because the only context in which that difference was raised was as part of a bad faith and IFCA claim. And what they were saying was, well, that was unreasonable. And Judge Kuenhauer said, you haven't brought anything in to show that it was unreasonable. Well, they did bring in as evidence the evidence that there was a $56,000 estimate as distinct from the $32,000. But that standing alone doesn't... It's evidence, is it not? That's a yes or no question. Was there evidence of valuation at $56,000? There was evidence, but I'd like to explain why it wasn't material. Why it wasn't what? Why it didn't create a material question of fact with respect to reasonableness. Okay. Because reasonableness for the purposes of bad faith, reasonableness for the purposes of IFCA, is not measured by are you right or are you wrong? It's measured by was there a reasonable basis for the decision of the insurance company? Right. I understand that. But why doesn't it raise an issue of fact as to the amount that should have been paid for what you concede is what you have to pay for, which is the north whatever corner of this building that fell down? Because this estimate, the $56,000 estimate, was for exactly what you agreed to pay for. It was just a different estimate. So why isn't there a question of fact on the right amount? There could be a question of fact on the right amount. But if I understand the way that this record played out, the Davises did not actually assert a claim for the difference of that amount. What they did was they said it was bad faith not to pay us more. Well, why couldn't it even raise a question of fact as to the reasonableness of that decision in light of the fact that there was an estimate that was almost twice as much? Was that a question of fact? Was that a reasonable decision in light of that estimate? Well, what the Washington cases say, Your Honor, is that an insurer does not act in bad faith unless its determination on a claim is frivolous and without any justification. We plainly did have a justification. We had a bid from a contractor who said he'd do it. Right, but I don't understand why you're entitled to summary judgment on the amount of your payment where there are two competing equally plausible estimates as to how much that portion that you agree you have to pay for should cost. Your Honor, I think I can concede that if that's the issue, there probably is a dispute of fact as to that amount, as to that amount. But that wasn't the issue that the Davises raised. You mean raised in the district court, right? Exactly, exactly, exactly. They were using that to leapfrog into an extra contractual claim, but they never said, no, by the way, we want the difference. Well, their complaint is broad enough to cover it, certainly. That may be, Your Honor, and certainly if that's how this case is narrowed down, it's a reasonably straightforward case, obviously. It's a difference in valuation of about $25,000 or $30,000. So that, I think, is the tail on this dog. The dog itself, obviously, is the question of the scope of the collapse coverage. What's your response to Judge Tichina's question as to whether, if this is a relatively standard provision in Washington, whether that's an appropriate subject for certification? My answer is no, and let me explain why. It doesn't matter which of the two lines of authority that are discussed in the briefs you adopt here. The outcome is the same because the dispositive question is not how you define collapse. In other words, do you define it as just some movement? Do you define it as completely falling down to rubble? That's not dispositive. What's dispositive is the abruptness. And in both lines of cases, abruptness is still required. I'll go back to this Malko case from Oregon because that seems to be really the cornerstone of the argument that the Davises have made. There's a follow-on case, and it's unit owners versus State Farm. It's at 670F sub second 1156. It's actually unit owners of Nestania Grecian Villa. It's also from the Oregon District Court. And what happened in that case was the court said, okay, fine, we acknowledge that Malko's there, but even if we adopt the Malko approach, in other words, it doesn't have to be an absolute falling down. Any movement, significant movement towards the ground is a falling down. It still has to be abrupt. And in that case, they said, well, there's a question of fact as to whether this was abrupt or not and what damages were caused by the abrupt movement and what was not. Here we know exactly what was caused by the abrupt movement. We have one area that abruptly moved. All the experts agreed. No question. We also have a larger area that did not abruptly move, and all the experts agree on that, too. And that's how you dispose of the case. And it doesn't really require that the Washington Supreme Court choose which of these two lines of authority to adopt to get to the answer in this case because under either line of authorities, the only part that's covered is the part that fell. So the answer here is really that we have unique facts. We don't have an abrupt falling down that affected the entire structure, and you might compare that Scorpio case that the Davises cited for the first time in their reply brief. In that one, you had an abrupt falling down of a roof, and the way that it worked was one truss fell and everything else went with it. Some of it fell all the way. Some of it only fell part of the way. And the court says it doesn't have to fall all the way to be a collapse, but it still has to be abrupt, just like in the Nestani case. So we had abrupt loss, non-abrupt loss, abrupt covered, but gradual loss not covered. Thank you, counsel. Thank you. Mr. Hanson, you did use up your time, but you may have a minute for rebuttal since we asked you a lot of questions. First, I want to point out concerning the two estimates that it's not just a difference of opinion. There was specific things that American states just decided not to pay for. They decided not to pay for the cost of all the permits. They decided not to pay for the cost of the damage to the bathroom that had been hurt by the falling debris. They decided not to pay for the cost of shoring up the wall. They decided not to pay for the cost of framing. And those were all things that Sterling Group, the contractor, felt were necessary to do repairs. But you never made a direct claim, I'll call it, for the balance, right, the difference between your cost and the cost that the insurance company estimated were proper. Well, we believe that it was bad faith for them to – And all you made was a bad faith claim. That's correct. So you stand or fall on your bad faith claim. You never made a direct claim for the difference. Well, the issue is whether or not their decision was unreasonable, frivolous, or unfounded and placed their interests above the Davis's. And their adjuster testified that he never even asked Sterling why Sterling had included those costs. That's unreasonable, to not even investigate or ask why this estimate contained those things. So it's not just a matter of a difference of opinion. They didn't even look into the opinion of Sterling. They never investigated it. And also Sterling was always the only contractor that was going to do those repairs. So Belfour's estimate was a purely consultation for the benefit of American states. The actual contractor believed those things were necessary. Thank you, counsel. Thank you, Your Honor. The case just argued is submitted. We appreciate the helpful arguments of both of you. They were excellent arguments, and we will, I know, make a better decision because of them. Thank you.
judges: Tashima, Graber, Murguia